CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 15 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Criminal Action No. 7:06-cr-00051 |
| | ) | |
| v. | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| **CHARAZZ KEVIN MORAN,** | ) | By: Hon. James C. Turk |
| Petitioner. | ) | Senior United States District Judge |

Charazz Kevin Moran, a federal prisoner proceeding with counsel, filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Moran alleges that he received ineffective assistance of counsel. The United States filed a motion to dismiss, and Moran responded, making the matter ripe for the court's disposition. After reviewing the record, the court grants the United States' motion to dismiss Moran's ineffective assistance of counsel claims that implicate his direct appeal rights, and the court directs the United States to submit a supplemental motion addressing Moran's remaining claims.[1]

I.

A.

Moran hired attorney Welch to represent him in federal criminal proceedings after agents for the United States arrested him on suspicion of violating federal drug and gun laws. (Horn Aff. (USA First Mot. Dismiss (docket #169) Ex. 6) 1.) Welch received chemotherapy and other cancer treatments in the weeks before Moran's trial. (Petr.'s Second Mem. Supp. Mot. to Vacate

---

[1] When a district court grants a § 2255 motion due to counsel's ineffectiveness regarding a a direct appeal, the court may not consider the merits of any of the remaining claims in the § 2255 motion but must dismiss those claims without prejudice. See United States v. Killian, 22 Fed. Appx. 300 (4th Cir. 2001). Since the outcome of Moran's direct appeal claims affected Moran's other claims, the United States did not specifically brief Moran's other claims. Instead, the United States requested the opportunity to brief the remaining claims if the court dismisses Moran's direct appeal claims. Pursuant to the court's standing order, the court directs the United States to file a supplemental motion for the remaining claims.

attorney, Horn, for advice about Moran's case, and Horn volunteered to assist Welch with Moran's trial.[2] (Horn Aff. 1.) Horn reviewed the case file but was not present for pre-trial arguments or periods during the trial because of his obligations to other clients. (Sent. Tran. (docket #155) 18; Horn Aff. 1.)

On April 3, 2007, a jury convicted Moran of conspiracy to possess with intent to distribute heroin, in violation of 18 U.S.C. § 846 ("Count One"); possession with intent to distribute heroin, in violation of 18 U.S.C. § 841(a)(1) ("Count Two"); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) ("Count Three"); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count Four").

On April 30, 2007, Moran requested that the court appoint new counsel to replace Welch. Horn filed a motion to postpone the sentencing hearing scheduled for July 17, 2007, because Welch was expected to undergo additional cancer treatments. Welch passed away in September 2007. On September 26, 2007, the court appointed Horn nunc pro tunc as Moran's co-counsel as of the date of the jury trial.

The court held Moran's sentencing hearing on November 14, 2007. Before announcing the sentence, the court heard argument about whether Moran qualified as an armed career criminal ("ACC") under the Armed Career Criminal Act ("ACCA").[3] The court ultimately determined Moran was not an ACC, and the court sentenced Moran to 180 months incarceration:

---

[2] Horn rented space from Welch for a separate law practice. (Horn Aff. 1.)

[3] The ACCA, codified at 18 U.S.C. § 924(e), sets a mandatory minimum sentence of fifteen years incarceration and bars a court from suspending a sentence or granting probation if a person is found guilty of 18 U.S.C. § 922(g) and has three previous convictions consisting of violent felonies or serious drug offenses committed on separate occasions.

120 months incarceration for each of Counts One, Two, and Four, to be served concurrently, and 60 months incarceration for Count Three, to be served consecutively.[4] (J. (docket #127) 3.)

On November 24, 2007, Horn timely filed a notice of direct appeal, but Moran withdrew the appeal on December 3, 2007. Moran withdrew the appeal as part of an agreement with the United States that the United States would not file an appeal about Moran's ACC status if Moran did not appeal any issue. (Mot. to Withdraw Appeal (docket #132.)) Both parties fulfilled the agreement by not pursuing appeals. See docket #133 (order from the Fourth Circuit Court of Appeals granting petitioner's motion to withdraw his appeal).

B.

On June 9, 2008, Moran filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, alleging the following. Counsel Welch was ineffective because he was recovering from chemotherapy and related cancer treatments. (Mot. to Vacate (docket #148) 4.) He did not adequately prepare for the trial because of his condition. If counsel was prepared, Count Three would not have been tried before the jury because Moran was not arrested with a firearm in his possession. (Id. at 5.) Welch also should have known that the firearm was from a prior arrest and that mere proximity of the gun to the drugs was insufficient to sustain a conviction. (Id.)

Furthermore, a Roanoke City police officer found the firearm in the car Moran was

---

[4] If the court considered Moran as an ACC, his total offenses level would have been 33 with a criminal history category of IV, equaling an advisory guideline range of 188 to 235 months incarceration for Counts One, Two, and Four and a mandatory 60 months sentence for Count Three. (Presentence Report ("PSR") (docket #131) 16.) Therefore, Moran could have been incarcerated up to 295 months as an ACC. When the court declined considering Moran an ACC, Moran qualified for a total offense level of 28 with a criminal history category of IV, equaling an advisory guideline range of 110 to 137 months incarceration for Counts One, Two, and Four and a mandatory 60 months sentence for Count Three. (Sent. Tran. (docket #155) 40.) Therefore, Moran could have been incarcerated up to 197 months as a non-ACC.

3

driving on May 14, 2006, when the officer stopped Moran for a missing bolt in the car's license plate. (Id. at 6, 15.) No probable cause existed to detain and search Moran during the traffic stop because a missing license plate bolt does not violate Virginia law. (Id. at 15.) Moran was not subsequently charged in state court for any firearm or drug crime resulting from the traffic stop. (Id.)

If Welch was prepared, he also would have impeached co-defendant Puller's testimony about whether Moran possessed a nickel-plated or black-steel firearm and the DEA agent's testimony that Moran emerged from the basement stairs. (Mot. to Vacate 11.) Welch also would have called several witnesses to testify. Joy Swann would have testified that she owned the vehicle Moran was driving during the traffic stop. (Id. at 18.) Mike Irizary would have testified that the firearm in the car belonged to him. (Id.) Carmen Roman would have testified that co-defendant Puller was a drug dealer. (Id.) Jamal Basterville would have testified that he drove Moran from Moran's house to Puller's house on the date of Moran's arrest. (Id.) "Bob the landlord" would have testified that co-defendant Puller was only allowed to rent the basement, not the upstairs apartment. (Id.) Simone Basden, the lessee of the upstairs apartment, would have testified that she asked Moran to go to her apartment to see if someone was burglarizing it. (Mot. to Vacate 18.)

Welch was also ineffective for not asking the court to sever Count Four from the remaining counts before trial. (Id. at 8.) The admitted evidence of Moran's prior convictions unfairly prejudiced Moran by rendering the verdict unreliable. Moran was also unfairly prejudiced when information about Moran's then-pending state charge was disclosed to the jury even though the state charge was later nolle-prossed. (Id. at 9.) The heroin should also be

4

excluded as evidence because the search warrant for the house where the drugs were found only authorized a search for marijuana. (Id. at 16.) Therefore, the police searched for contraband beyond the four corners of the search warrant and unlawfully seized the heroin. (Id.)

Counsel Horn also provided ineffective assistance because he never investigated the facts nor prepared a defense or an appeal. (Id. at 13.) Horn gave Moran bad advice, coercing him to unknowingly and involuntarily waive his appeal rights. (Id.)

C.

By order dated June 16, 2008, the court appointed the Federal Public Defender ("FPD") to represent Moran in this matter. On October 7, 2008, the FPD submitted a memorandum in support of Moran's § 2255 motion and attached Moran's sworn affidavit.[5] Moran alleges that Horn told him that he qualified as an ACC and would receive a fifteen-year sentence for Count Four if he appealed. (Petr.'s First Aff. (Petr.'s First Resp. to USA's Mot. to Dismiss (docket #159) Ex. 1) 2.) Moran also claims that Horn also told him that he could raise the same issues on habeas review as he could on direct appeal. (Id.) Moran avers that he relied on this advice when he withdrew his direct appeal.

The United States responded with a motion to dismiss that references documents beyond the pleadings. The United States included Horn's affidavit and correspondence between its counsel and Horn. (USA First Mot. Dismiss Ex. 2, 3, 6.) Moran responded to the motion to dismiss by a letter addressed to the court, in which Moran acknowledges that Horn did not coerce him. (Petr.'s Post J. Resp. (docket #166) 4.) Instead, Moran says he was under duress when

---

[5] Moran also submitted his own memorandum of support on October 24, 2008. (Docket #164.) The claims discussed in this memorandum reflect the claims made in his § 2255 motion. However, Moran also alleges in this memorandum that Horn told him that he could raise his direct appeal issues in a habeas proceeding.

5

Horn advised him that he did not have any meritorious appellate issues and that his interests were best served by not forcing the United States to cross-appeal his ACC status. (Id.)

II.

A.

As an initial matter, Moran filed a self-styled motion requesting copies to prepare his motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. The court conditionally filed his request as a § 2255 motion and directed him to return a completed "Motion to Vacate, Set Aside, or Correct a Sentence By a Person in Federal Custody" form. Moran complied and returned the form signed under penalty of perjury. Accordingly, the court grants Moran's motion to amend the motion to vacate, set aside, or correct sentence (docket #148).

B.

The court must treat the United States' motion to dismiss as one for summary judgment because the motion references documents beyond the pleadings that the court will not exclude. Fed. R. Civ. Pro. 12(d).[6] In a motion for summary judgment, the court views the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."

---

[6] The court did not issue a Roseboro notice because petitioner is proceeding with counsel.

Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc., 840 F.2d 236, 240 (4th Cir. 1988). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). However, no genuine issue can exist as to any material fact if a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

C.

After conviction and exhaustion, or waiver of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. United States v. Frady, 456 U.S. 152, 164 (1982). However, a prisoner in federal custody may attack the validity of his sentence pursuant to 28 U.S.C. § 2255. Section 2255 cures jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice," or events that were "inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 784 (1979). In order to petition a court to vacate, set aside or correct a sentence under § 2255, a petitioner must prove that one of the following occurred: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

A § 2255 petitioner is "entitled to an evidentiary hearing only to resolve disputed issues of material fact," which requires "a colorable claim to relief by showing that the alleged additional facts, if true, would at least arguably compel the granting of the writ." Poyner v.

7

Murray, 964 F.2d 1404, 1422 (4th Cir. 1992) (internal quotation marks and citation omitted). Because § 2255 proceedings are civil actions, petitioners must establish their allegations by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965). Nevertheless, a hearing must be denied if the petitioner's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently false or frivolous to warrant summary dismissal. See Blackledge v. Allison, 431 U.S. 63, 76 (1977); United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988).

### D.

Ineffective assistance of counsel claims are properly addressed upon § 2255 motions and generally cannot be raised on direct appeal unless counsel's ineffectiveness conclusively appears on the record. See Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that federal habeas petitioner may bring ineffective assistance claim in § 2255 proceedings whether or not he could have raised the claim on direct appeal). To prove ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). If a petitioner has not satisfied one prong of the Strickland test, the court does not need to inquire whether he has satisfied the other prong. Strickland, 466 U.S. at 697. Furthermore, "an attorney's acts or omissions that are not unconstitutional individually cannot be added together to create a constitutional violation." Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).

The first prong of Strickland requires a petitioner to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of

reasonableness. Strickland, 466 U.S. at 687-88. Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." Id. Furthermore, "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978). A defendant has the ultimate authority to make the fundamental decision as to whether to take an appeal, Jones v. Barnes, 463 U.S. 745, 751 (1983), and counsel's obligation to assist the defendant includes a duty "to consult with the defendant on important decisions," Strickland, 466 U.S. at 688. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000).

The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him. Strickland, 466 U.S. at 692. To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

1. Horn did not provide constitutionally ineffective assistance by advising Moran that Moran's interests were best served by withdrawing a direct appeal because of the probability of being resentenced as an ACC.

Moran alleges that Horn provided ineffective assistance of counsel when Horn advised Moran that he should withdraw his notice of appeal because Horn believed that the court erroneously, but favorably, sentenced him; Moran did not have any meritorious arguments on

9

appeal; and Moran could pursue the same issues on collateral review as on direct appeal. (Petr.'s Second Mem. Supp. Mot. to Vacate 18-19.) Moran alleges that he subsequently withdrew his notice of appeal after relying on Horn's advice, which prejudiced him by allegedly defaulting appellate review of his claims. (Petr.'s First Aff. 2-3.)

Horn's advice to withdraw the appeal clearly does not constitute deficient performance under Strickland. Horn states in his affidavit that he concluded that Moran qualified for the ACC enhancement after investigating the issue before the sentence hearing occurred. (Horn Aff. 3.) Horn reviewed the PSR, filed an objection to Moran being considered an ACC, and successfully argued his position at the sentencing hearing. (Objection to ACC Consideration (docket #110); Sent. Tran. 7-12, 16-18.) The court concluded that, in light of Moran's youth and the possibility of a long incarceration, it would give Moran the benefit of the doubt and not apply the ACC enhancement, but the court recognized that he probably was eligible for it. (Sent. Tran. 34.) The court also recognized that "if it goes up on appeal, [the court] wouldn't be surprised if the Fourth Circuit doesn't send it back and say treat him as a career offender."[7] (Id. at 35.) The court further advised Moran that, "you have a right to appeal your sentence. . . . I wouldn't advise it unless the government appeals, but that's up to you." (Id. at 45.)

The United States noted its objection to the ruling, preserving the issue for appeal. (Id. at 35.) However, the United States agreed to not appeal the ACC issue if Moran also waived his right to appeal the case. (USA letter to Horn (USA Mot. to Dismiss 55.)) Horn diligently filed a timely notice of appeal to preserve Moran's appellate right while consulting with Moran about

---

[7] The court also chose to not apply two sentencing points for obstruction of justice that could apply because Moran testified he was innocent although the jury subsequently adjudged him guilty. (Sent. Tran. at 34-35.)

10

the United States' offer. (Horn letter to USA (USA Mot. to Dismiss 54.))

Horn met with Moran after the sentencing hearing, and Horn told him that the court erred by not applying the ACC enhancement and the United States would win the issue if it appealed. (Petr.'s First Aff. 1-2.) Horn advised Moran that the court would likely resentence him as an ACC if the United States appealed, dramatically increasing the length of his incarceration. (Petr.'s First Aff. 1-2; Horn Aff. 3.) Horn advised Moran that if he waived his appeal, he would keep his imposed, more lenient sentence. (Petr.'s First Aff. 2; Horn Aff. 3.) Moran agreed and signed an appeal waiver form. Horn states, "I believe the advice was in Moran's best interest since it greatly minimized the sentence he could have gotten. Moran was never coerced."[8] (Horn Aff. 3.) Horn thereafter contacted the United States, and they both agreed to not pursue an appeal.[9]

Moran is not challenging the court's decision to not apply the ACC enhancement; rather, Moran challenges whether Horn's advice about his ACC status constitutes ineffective assistance of counsel. Therefore, the court must decide whether Horn's advice was so seriously erroneous that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[10] Strickland, 466 U.S. at 687. The court must evaluate counsel's conduct from counsel's perspective at the time, and the court must be highly deferential to counsel's

---

[8] Moran alleged in his motion to vacate that Horn coerced him into abandoning his appeal. (Mot. to Vacate 13.) However, Moran acknowledges in his letter to the court that Horn did not coerce him but that he was "under duress." (Petr.'s Post J. Resp. 4.)

[9] The Fourth Circuit Court of Appeals subsequently dismissed Moran's appeal. (USA First Mot. Dismiss Ex. 5, 6.)

[10] Conversely, the court is not required to decide whether the United States Court of Appeals for the Fourth Circuit would have compelled the court to apply the ACC enhancement. The only question before the court is counsel's performance and the extent of resulting prejudice, if any.

11

performance. Id. at 689.

Horn had a reasonable belief that the ACC enhancement applied if Moran had three prior convictions for a violent felony or a serious drug offense. Horn states, to which Moran does not disagree, that he reviewed Moran's prior convictions applicable to the ACCA.[11] (Horn Aff. 3.) In this context, Moran had three prior convictions, including a 1991 conviction under New York state law for robbery in the third degree, a 1997 conviction of conspiracy to possess and distribute heroin, and a 1997 conviction of conspiracy to possess and distribute cocaine base.

Horn researched Moran's prior convictions and concluded that the robbery conviction probably constituted a violent felony and the drug convictions probably constituted serious drug offenses. (Horn Aff. 3.) A violent felony is "any crime punishable by imprisonment for a term exceeding one year . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e). A defendant need not use or threaten use of force because "it is enough that the crime of which the defendant was convicted has as an element the use or threatened use of force." United States v. Presley, 52 F.3d 64, 69 (4th Cir. 1994). The New York robbery statute for which Moran was convicted makes it unlawful to "forcibly steal[] property" and is punishable by a term of imprisonment longer than one year. See N.Y. Penal Law § 160.05; 70.00(2), (3). The state court convicted Moran as an adult because he was seventeen years old at the time. See N.Y. Penal law § 30.00(1) (stating relevant age of majority in New York is sixteen). Therefore, it was reasonable for Horn to

---

[11] The PSR listed six non-traffic criminal convictions. (PSR 8-12).

believe that this conviction could count toward the ACC enhancement.[12]

To qualify as a serious drug offense for the ACC enhancement, the offense must be prohibited by the Controlled Substances Act, 21 U.S.C. § 801 et seq., "for which a maximum term of imprisonment of ten years or more is proscribed by law." 18 U.S.C. § 924(e)(2)(a)(i). Moran previously pled guilty to two violations of the Controlled Substances Act: a conspiracy to possess with the intent to distribute and distributed heroin ("Conviction Two") and a conspiracy to possess with the intent to distribute and distributed cocaine base ("Conviction Three"). Moran faced ten years imprisonment or more for Conviction Two and up to forty-years imprisonment for Conviction Three. See 21 U.S.C. § 841 (b)(A)-(B).

The ACC enhancement also requires that the convictions be committed on different occasions. 18 U.S.C. § 924(e)(1). To decide whether previous convictions were committed on different occasions, the court would consider whether the offenses occurred in different geographic locations; were substantively different; and involved multiple victims or multiple criminal objectives. United States v. Hobbs, 136 F.3d 384, 388 (4th Cir. 1998). However, Moran pled guilty to both Conviction Two and Conviction Three. See PSR 11 (stating Moran sold controlled substances on four separate controlled buys); United States v. Broce, 488 U.S. 563, 570 (1989) ("By entering a plea of guilty, the accused is not simply stating that he did the

---

[12] Moran argues that the robbery conviction is a non-qualifying felony under 18 U.S.C. § 3559(c)(3)(A)(i-ii). (Petr.'s Resp. to Mot. to Dismiss (docket #170) 3.) This section provides that a court will not count a robbery conviction as serious violent felony for a strike toward a mandatory life sentence "if the defendant establishes by clear and convincing evidence that (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and (ii) the offense did not result in death or serious bodily injury to any person." This argument is without merit because § 3559 does not apply to Moran. The court did not sentence Moran under the strike scheme for a mandatory life sentence. In any event, the PSR indicates that Moran's guilty plea to the robbery conviction flowed from an indictment also charging Moran with displaying a firearm because he allegedly displayed what appeared to be a firearm during the commission of the robbery. (PSR 8-9.)

discrete acts described in the indictment; he is admitting guilt of a substantive crime.") Therefore, it was reasonable for Horn to believe that these drug convictions probably qualified as separate serious drug offenses for ACC status.

After reviewing the law applicable to the ACC enhancement, Horn, the United States Probation Officer, the Assistant United States Attorney, and the court all acknowledged that Moran probably qualified for the enhancement. However, the court was merciful and decided not to apply the enhancement. The court subsequently sentenced Moran to only 180 months incarceration instead of up to 295 months incarceration that he could have received with the enhancement. (PSR 16.)

The court would not have been so persuaded without Horn's objections and arguments. Ultimately, Horn briefed and argued the issue so deftly that the court did not consider Moran an ACC. Despite such a favorable sentencing outcome, Horn dutifully preserved Moran's right to an appeal while he brokered an agreement that prevented the United States from appealing an issue that it may have won, costing his client more than eight years of extra incarceration. Horn advised Moran of the applicable facts and did not coerce Moran's rationale decision to abandon his appeal right, as Moran acknowledges. Moran ultimately decided his own fate although Moran says he made the decision to forego an appeal while stressed and "susceptible" to his attorney's advice. After viewing the facts free from such pressures and in a light favorable to Moran, the court finds that Moran fails to establish that Horn's performance was deficient or that he was prejudiced as a result.

2. Horn did not provide constitutionally ineffective assistance by advising Moran that he could raise issues normally brought on direct review via collateral review.

Moran also claims that he relied on Horn's advice that he could "argue the same issues on a [h]abeas as [he] would on [his] direct appeal with the benefit of the government not cross appealing."[13] (Petr.'s First Aff. 2.) Moran avers that Horn "advised me that I would be best off if I withdraw my appeal because [Horn] found out that I could argue the same issues on a [h]abeas as a direct appeal, and I was an [ACC]." (Id.) Moran complains that he would not have withdrawn his direct appeal but for counsel's alleged advice that he could raise the same issues on habeas review as on direct appeal and counsel's prediction of ACC status. Horn avers that:

> Moran asked me if he could raise his appeal issues on habeas corpus review <u>in the context of ineffective assistance of counsel</u>. Moran complained about Mr. Welch and believed he did not do a good job. I did not tell him he could raise those issues just like an appeal. I told him that he could include them in his claims of ineffective assistance of counsel and that he did not waive his 2255 rights by waiving his appeal. Moran waived his appeal because I advised him that he would get more time in prison if he went forward. I believe Moran benefitted from my advice.

( Horn Aff. 3-4) (original emphasis).

After taking Moran's allegation in a light most favorable to him, he fails to establish that Horn's advice constitutes deficient performance. See Strickland, 466 at 689 (establishing a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance). No federal statute or constitutional requirement bars a § 2255 habeas petitioner from raising an issue for the first time on collateral review. Massaro, 538 U.S. at 504. Claims that were not raised on direct appeal may be raised for the first time on § 2255 review subject to the

---

[13] Moran did not makes this allegation in his first self-styled motion (docket #146) nor in his motion to vacate, set aside, or correct sentence (docket #148). Only in his affidavit submitted with counsel's memorandum in support (docket #159) and Moran's memorandum in support (docket #164) did he specifically claim that Horn told him that he could argue on habeas review the same claims he would have raised on direct review.

15

judicial doctrine of procedural default if the doctrine is asserted by the United States. See Strickland, 466 U.S. at 684 (noting that the exhaustion rule is not a federal jurisdictional bar); Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir. 1999) ("[T]he issue of procedural default generally is an affirmative defense that the [government] must plead in order to press the defense thereafter."); Howard v. United States, 374 F.3d 1068, 1073 (11th Cir. 2004) (holding that procedural default is an affirmative defense in § 2255 cases); see also Reed v. Farley, 512 U.S. 339, 354-55 (1994) ("[C]ollateral review of procedurally defaulted claims is subject to the same 'cause and actual prejudice' standard, whether the claim is brought by a state prisoner under § 2254 or a federal prisoner under § 2255.") (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)). However, an ineffective assistance of counsel claim may be brought in § 2255 proceedings regardless if the petitioner could have raised the claim on direct appeal. Massaro, 538 U.S. at 504. Moran also recognized in a previous letter to the court that procedural default, even if it is actually applied, is not an absolute bar. (Petr.'s Letter (docket #154) 7.) Therefore, Moran fails to establish deficient performance under Strickland.

Even assuming, arguendo, that counsel performed deficiently, Moran cannot establish actual prejudice under Strickland. Counsel reviewed the trial record, consulted with Moran, and advised him that he did not have any viable claims on direct appeal to warrant a reversal of the jury's verdict. As previously discussed, all parties believed Moran qualified for the ACC enhancement and that he would likely receive a much longer sentence if he pursued an appeal. A reasonable defendant would not want to appeal issues that counsel advised are unlikely to vacate his conviction while jeopardizing his lenient sentence that could likely be overturned and result in more than eight years of extra incarceration. See Roe, 528 U.S. at 480 (applying Strickland

performance prong for counsel's obligation to consult about filing a direct appeal). No reasonable fact finder would agree that Moran would appeal his issues, jeopardizing his more lenient sentence, in reliance of Horn's advice. Therefore, Moran fails to establish a dispute of material fact that Moran experienced actual prejudice stemming from Horn's advice about habeas review. Accordingly, the court grants the United States' motion to dismiss because Moran failed to establish either deficient performance or actual, resulting prejudice under Strickland.

III.

For the foregoing reasons, the court grants Moran's motion to amend his motion to vacate and grants the United States' motion to dismiss Moran's ineffective assistance of counsel claims that implicate his direct appeal rights. The court also directs the United States to submit a supplemental motion regarding Moran's remaining claims.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to counsel of record for the petitioner and for the United States.

**ENTER**: This 15th day of April, 2009.

_____
Senior United States District Judge