CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 2 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:06-cr-00051-1 |
| | ) | |
| v. | ) | **§ 2255 MEMORANDUM OPINION** |
| | ) | |
| CHARAZZ KEVIN MORAN, | ) | By: Hon. James C. Turk |
| Petitioner. | ) | Senior United States District Judge |

Charazz Kevin Moran, a federal prisoner proceeding with counsel, filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Moran alleges that he received ineffective assistance of counsel during his trial. The court previously granted the United States' first motion to dismiss Moran's ineffective assistance of counsel claims against attorney Horn that implicated petitioner's direct appeal rights and directed the United States to submit a supplemental motion addressing Moran's remaining claims. The United States filed its supplemental motion to dismiss, Moran did not respond, and the court dismissed the action on the merits. The court subsequently granted Moran's motion for relief from the judgment and ordered Moran to respond to the United States' motion to dismiss. Petitioner responded, making the matter ripe for disposition. After reviewing the record, the court grants the United States' supplemental motion to dismiss and denies Moran's § 2255 motion.

I.

A.

Moran hired attorney Welch to represent him in federal criminal proceedings after agents for the United States arrested him on suspicion of violating federal drug and gun laws. (Horn Aff. (USA Second Mot. Dismiss (no. 201) Ex. A) 1.) Welch received chemotherapy and other cancer treatments in the weeks before Moran's trial. (Petr.'s Second Mem. Supp. Mot. to Vacate

(no. 164) 9; Horn Aff. 1.) About a week before Moran's trial began, Welch asked another attorney, Horn, for advice about Moran's case, and Horn volunteered to assist Welch with Moran's trial.¹ (Horn Aff. 1.) Horn reviewed the case file but was not present for pre-trial arguments or periods during the trial because of his obligations to other clients. (Sent. Tran. (no. 155) 18; Horn Aff. 1.)

On April 3, 2007, a jury convicted Moran of conspiring to possess with intent to distribute heroin, in violation of 18 U.S.C. § 846 ("Count One"); possession with intent to distribute heroin, in violation of 18 U.S.C. § 841(a)(1) ("Count Two"); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) ("Count Three"); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count Four").

On April 30, 2007, Moran requested that the court appoint new counsel to replace Welch. Horn filed a motion to postpone the sentencing hearing scheduled for July 17, 2007, because Welch was expected to undergo additional cancer treatments. Welch passed away in September 2007. On September 26, 2007, the court appointed Horn as Moran's co-counsel nunc pro tunc as of the date of the jury trial.

The court held Moran's sentencing hearing on November 14, 2007, and sentenced Moran to 180 months incarceration: 120 months incarceration for each of Counts One, Two, and Four, to be served concurrently, and 60 months incarceration for Count Three, to be served consecutively. (J. (no. 127) 3.) On November 24, 2007, Horn timely filed a notice of direct appeal, but Moran withdrew the appeal on December 3, 2007. Moran withdrew the appeal as

---

¹Horn rented space from Welch for a separate law practice. (Horn Aff. 1.)

part of an agreement with the United States that the United States would not file an appeal about Moran's Armed Career Criminal ("ACC") status if Moran did not appeal any issue. (Mot. to Withdraw Appeal (no. 132.)) Both parties fulfilled the agreement by not pursuing appeals. See no. 133 (order from the Fourth Circuit Court of Appeals granting petitioner's motion to withdraw his appeal).

B.

On June 9, 2008, Moran filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, alleging the following facts and claims.[2] Counsel Welch was ineffective because he was recovering from chemotherapy and related cancer treatments. (Mot. to Vacate (no. 148) 4.) He allegedly did not adequately prepare for the trial because of his condition. If counsel was prepared, Count Three would not have been tried before the jury because Moran was not arrested with a firearm in his possession. (Id. 5.) Welch also should have known that the firearm was from a prior arrest and that mere proximity of the gun to the drugs was insufficient to sustain a conviction. (Id.)

Furthermore, a Roanoke City police officer found the firearm in the car Moran was driving on May 14, 2006, when the officer stopped Moran for a missing bolt in the car's license plate. (Id. 6, 15.) No probable cause existed to detain and search Moran during the traffic stop because a missing license plate bolt does not violate Virginia law. (Id. 15.) Moran was not subsequently charged in state court for any firearm or drug crime resulting from the traffic stop. (Id.) If Welch was prepared, the court would have ruled in his favor and suppressed the firearm.

---

[2]Petitioner also filed ineffective assistance claims against attorney Horn. However, the court dismissed these claims, and petitioner's remaining ineffective assistance claims are against only attorney Welch.

3

If Welch was prepared, he also would have impeached co-defendant Puller's testimony about whether Moran possessed a nickel-plated or black-steel firearm and the DEA agent's testimony that Moran emerged from the basement stairs. (Mot. to Vacate 11.) Welch also would have called several witnesses to testify. Joy Swann would have testified that she owned the vehicle Moran was driving during the traffic stop. (Id. 18.) Mike Irizary would have testified that the firearm in the car belonged to him. (Id.) Carmen Roman would have testified that co-defendant Puller was a drug dealer. (Id.) Jamal Basterville would have testified that he drove Moran from Moran's house to Puller's house on the date of Moran's arrest. (Id.) "Bob the landlord" would have testified that co-defendant Puller was only allowed to rent the basement, not the upstairs apartment. (Id.) Simone Basden, the apartment's lessee, would have testified that she asked Moran to go to her apartment to see if someone was burglarizing it. (Mot. to Vacate 18.)

Welch was also ineffective for not asking the court to sever Count Four from the remaining counts before trial. (Id. 8.) The admitted evidence of Moran's prior convictions unfairly prejudiced Moran by rendering the verdict unreliable and placing him in double jeopardy. Moran was also unfairly prejudiced when information about Moran's then-pending state charge was disclosed to the jury even though the state charge was later nolle-prossed. (Id. 9.) The heroin should also be excluded as evidence because the search warrant for the house where the drugs were found only authorized a search for marijuana. (Id. 16.) Therefore, the police searched for contraband beyond the four corners of the search warrant and unlawfully seized the heroin. (Id.)

II.

A.

Petitioner filed a motion for leave to file his response to the United States' supplemental motion to dismiss out of time. Pursuant to Rule 6(b)(1)(B), the court grants Moran leave to file his response beyond the deadline the court previously set for the reasons stated in the motion.

Petitioner also filed a motion for default judgment, requesting his immediate release because the United States allegedly failed to timely file its responses within the time ordered by the court. However, the court has granted the United States' leave to file its responses out of time, and thus, no default occurred. Furthermore, Rule 55(d) of the Federal Rules of Civil Procedure holds that "[a] default judgment may be entered against the United States . . . only if the claimant establishes a claim or right to relief by evidence that satisfies the court." For the reasons stated herein, petitioner is also not entitled to a default judgment because he does not establish a right to relief.[3]

B.

The United States filed a supplemental motion to dismiss that references Horn's affidavit. (USA Second Mot. Dismiss Ex. A.) Therefore, the court must treat the United States' motion to dismiss as one for summary judgment because the motion references documents beyond the pleadings that the court will not exclude. Fed. R. Civ. Pro. 12(d). A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits

---

[3] Based on the circumstances in this case and the response from counsel for the United States, the court also does not believe sanctions are presently appropriate. The court does not presently believe that any delay by the United States or petitioner's counsel in this case to timely file responses presently undermines the authority of the court.

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de

France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

C.

After conviction and exhaustion, or waiver of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. United States v. Frady, 456 U.S. 152, 164 (1982). However, a prisoner in federal custody may attack the validity of his sentence pursuant to 28 U.S.C. § 2255. Section 2255 cures jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice," or events that were "inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 784 (1979). In order to petition a court to vacate, set aside or correct a sentence under § 2255, a petitioner must prove that one of the following occurred: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

A § 2255 petitioner is "entitled to an evidentiary hearing only to resolve disputed issues

of material fact," which requires "a colorable claim to relief by showing that the alleged additional facts, if true, would at least arguably compel the granting of the writ." Poyner v. Murray, 964 F.2d 1404, 1422 (4th Cir. 1992) (internal quotation marks and citation omitted). Because § 2255 proceedings are civil actions, petitioners must establish their allegations by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965). Nevertheless, a hearing must be denied if the petitioner's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently false or frivolous to warrant summary dismissal. See Blackledge v. Allison, 431 U.S. 63, 76 (1977); United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988).

D.

Petitioner argues that no probable cause existed for a traffic stop that he believes provided the basis for his firearm charges; the search and seizure of narcotics in the apartment were illegal because the search warrant described marijuana but officers seized other narcotics; and the United States placed him in double jeopardy when a then-pending state charge was disclosed to the jury although the state charge was later nolle-prossed. Absent extreme circumstances not found in the instant matter, failing to raise these claims on direct appeal constitutes procedural default. A defaulted claim may be raised in a § 2255 proceeding only if the petition demonstrates both cause or excuse for failing to raise the issue in a timely fashion, and actual and substantial prejudice resulting from that failure. See Bousley v. United States, 523 U.S. 614, 622 (1998); Frady, 456 U.S. at 170. "Cause" in this context means that some objective factor beyond the defendant's control impeded or prevented him from presenting this claim. Coleman v. Thompson, 501 U.S. 722, 753 (1991). "Prejudice" in this context means that the error he failed

to timely note worked to his actual and substantial disadvantage, infecting his entire proceeding with error of constitutional magnitude. Frady, 456 U.S. at 170. Petitioner's burden to prove prejudice to justify collateral relief is "significantly higher" than it would be to prove error on direct appeal. Id. at 166.

Petitioner argued that Horn's alleged ineffective assistance caused him to withdraw his appeal. However, the court reviewed the merits of this claim and held that petitioner did not receive ineffective assistance regarding the withdrawal of his notice of appeal. Therefore, petitioner has not demonstrated sufficient cause and prejudice to permit the court to review matters that petitioner could have raised on direct appeal.[4] Accordingly, the court finds these claims procedurally defaulted.[5]

E.

Ineffective assistance of counsel claims are properly addressed by § 2255 motions and generally cannot be raised on direct appeal unless counsel's ineffectiveness conclusively appears on the record. See Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that a federal habeas petitioner may bring an ineffective assistance claim in § 2255 proceedings whether or not he could have raised the claim on direct appeal). To prove ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668

---

[4]Petitioner was not prejudiced by avoiding direct review of the ACC issue, and no sufficient cause external to his defense entitles petitioner to escape his agreement to waive direct review because he made that decision. Petitioner's double jeopardy argument is also meritless because no sovereign tried him twice on the same charge.

[5]Moreover, petitioner had the opportunity to fully and fairly litigate his Fourth Amendment search and seizure claims. See Stone v. Powell, 428 U.S. 465, 494 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). See also United States v. Johnson, 457 U.S. 537, 562 n.20 (1982) (recognizing Stone's applicability to § 2255 cases).

(1984). If a petitioner has not satisfied one prong of the Strickland test, the court does not need to inquire whether he has satisfied the other prong. Strickland, 466 U.S. at 697. Furthermore, "an attorney's acts or omissions that are not unconstitutional individually cannot be added together to create a constitutional violation." Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).

The first prong of Strickland requires a petitioner to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." Id. Furthermore, "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978). The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him. Strickland, 466 U.S. at 692. To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

Petitioner alleges that trial counsel Welch provided ineffective assistance because he received chemotherapy treatments before trial. However, the court notes that Welch performed no differently than any other capable attorney who had not recently received chemotherapy

10

treatments. Welch spoke at length during opening and closing statements and actively engaged witnesses during direct and cross examinations. Welch also adeptly argued pretrial motions before the court. Notably, petitioner acknowledges in his response to the United States' motion to dismiss that he did not even become aware of Welch's condition "until Mr. Welch mentioned it for the first time in his closing argument at trial." (Pet.'s Resp. (no. 210) 4.) Petitioner's own assertion establishes that Welch did not project any inability from his condition. Therefore, the court finds that petitioner's allegation that Welch's pretrial chemotherapy treatments constitutes per se ineffective assistance is without merit because the chemotherapy treatments did not affect Welch in any outwardly manner to violate the Sixth Amendment.

Petitioner also argues that counsel should have made alternative arguments during the suppression hearings. The court reviewed the records of the suppression hearings held on March 15 and 19, 2007. At the first hearing, Welch cross-examined the testifying police officer and attempted to impeach him with his police report about whether the officer saw the drugs between a storm door, entry door, and a person standing in the doorway.

Welch further attempted to impeach the officer with his prior testimony about seeing the drugs when either co-defendant Puller or petitioner was at the door and speaking with the police. Welch further attacked the nexus between the apartment and petitioner. During petitioner's direct examination, Welch elicited why petitioner was at the apartment and how he and Puller responded to the police presence. However, petitioner testified during cross examination that he stayed with his fiancé at the apartment, kept clothes there, admitted being at the front door and closing it when he saw the police, and admitted the marijuana was his. Petitioner acknowledged that a lot of cash was found in his fiancé's bedroom in a pair of men's blue jeans, he knew of no

11

reason why the fiancé should have all that money stored there, and he shared the bedroom with the fiancé.

During the second suppression hearing, Welch cross examined the patrol officer who stopped petitioner's car and subsequently found the firearm in it. Welch challenged the officer's recollection of the events and elicited petitioner's version of events during petitioner's direct examination. Petitioner stated that the vehicle with the firearm under the driver's seat belonged to his sister and she was also using the car. Welch also argued to the court that the officer did not have reasonable and articulable suspicion to stop the car or probable cause to search the car's interior. Welch related the disputed facts to controlling legal precedent, but the court held that the drugs and firearm were admissible and the search warrant was valid. In denying petitioner's motions to suppress, the court stated:

> I find that he did not violate his constitutional rights after he had looked at his license and registration, flashing the flashlight in the automobile; that once he did that, he saw a green substance on the back floorboard and some white substance on the backseat, from his experience, he believed it to be crack cocaine and marijuana. I find that he did not violate Mr. Moran's rights by asking him to exit the vehicle; that he had a right then to pat him down, that he had a right to look in the vehicle, and that the weapon was found under the seat.
> * * *
> I'm also at this time going to overrule the motion to suppress the evidence found at the house in question. The officer testified that when he knocked on the door and the door was opened, he saw the drug in plain view. And once he saw that, he had a right, I think, to hold the people, to obtain a search warrant, which he did, and then search the premises. . . . The substance in question was in plain view on the coffee table, and he obtained a search warrant when Mr. Moran said you couldn't search the house without a warrant. And so I think the products of the search warrant are admissible . . . .

(Mar. 19, 2007, Hr'g Tran. 25-26.)

Petitioner alleges that Welch was ineffective for failing to introduce pictures of his car's

12

rear license plate. However, these day-time pictures of the license plate do not contradict the officer's testimony that the license-plate light did not adequately alight the plate from a distance of fifteen feet. Therefore, Welch was not deficient for not entering photos that bolstered the officer's testimony by confirming that his car lacked a license plate bolt and the inference that petitioner did not adequately maintain his car, including the license-plate light.

Petitioner further alleges that Welch was ineffective for not arguing that drugs found in the apartment were recovered from the basement apartment and not the apartment for which the warrant issued.[6] Petitioner alleges that this separate basement common area was not identified in the warrant and police exceeded the scope of the warrant by searching it. However, Welch was not ineffective for not raising this issue. It is evident that Welch's and Moran's strategy was to distance petitioner's connection to the apartment because the drugs and petitioner's co-defendant were in the basement. Prompted by Welch's questions, petitioner stated under oath that his address was not the apartment where the drugs were found, his fiancé lived at the apartment, and petitioner did not live there. Petitioner did not affirm that his name was on the apartment's lease.

In light of the facts of this case, it certainly was reasonable for Welch to strategically distance petitioner from the apartment and the drugs found in the basement where his co-defendant had access. However, to pursue this tack required Moran to abandon a privacy interest in the basement, foreclosing his ability to challenge the search. See Rakas v. Illinois, 439 U.S. 128, 148-49 (1978) (holding that a defendant must establish legitimate expectation of privacy in container to challenge use of evidence found during search). The court acknowledged that

---

[6]Petitioner alleges that the warrant was issued for Apartment A, an apartment consisting of the first floor of the apartment, but the police found heroin in the basement, a "common area" of the first floor and second floor apartments. (Petr.'s Mem. (no. 164) 12-13.)

13

petitioner disclaimed a privacy interest in the apartment at the conclusion of the suppression hearing, but further held that, even if he did have such an interest, the marijuana was seen in plain view and a search warrant was obtained in light of that probable cause.

Furthermore, the officers searched both the first-floor apartment (Apartment A) and the basement common area immediately accessible to the first floor apartment.[7] Upon walking down the basement stairs immediately connected to Apartment A's living area, the police saw in plain view a large bag containing hundreds of small heroin packets with a larger bag of heroin. (Tr. Tran. Day 1 86-87, 123.) The police also found heroin packets inside the wall-heating register in the bedroom petitioner acknowledging staying in sometimes. See United States v. Angelos, 433 F.3d 738, 747 (10th Cir. 2006) (seizure of duffel bags from garage and basement valid when officers, lawfully executing protective sweep, smelled raw marihuana coming from duffel bags in plain sight); United States v. Winston, 444 F.3d 115, 119-20 (1st Cir. 2006) (protective sweep of basement of defendant's residence valid because police reasonably suspected it could contain dangerous person; suspect had purchased firearms and had "numerous cohorts"); United States v. Geraldo, 271 F.3d 1112, 1118 (D.C. Cir. 2001) (police did not exceed scope of warrant by continuing to search townhouse with individual, locked bedrooms indicating multi-unit dwelling because agents limited search to common areas and rooms inhabited by persons named in arrest warrants and in affidavits accompanying search warrant); United States v. 500 Del. St., Tonowanda, N.Y., 113 F.3d 310, 313 (2d Cir. 1997) (police did not exceed scope of warrant to search "the apartment on the second floor" when they searched attic accessible only through door

---

[7]The police officer testified that the entryway into the basement was in the living room where the marijuana and bong were located. (Tr. Tran. Day 1 85.)

14

in common-area hallway because officer could reasonably ascertain that attic was included in area to be searched).

Moran also alleges that if Welch was prepared, he would have impeached co-defendant Puller's testimony about whether Moran possessed a nickel-plated or black-steel firearm and the DEA task-force agent's testimony that Moran emerged from the basement stairs. (Mot. to Vacate 11.) However, Puller testified that Moran handled a .9 millimeter, a TEC-9, and .45 caliber firearms in connection with his drug trade. Thus, whether Welch elicited impeaching testimony about one gun is not deficient performance. Regardless, Welch did, in fact, elicit testimony from Puller that the .45 caliber was black, and he sought to impeach Puller with prior testimony that the same gun was chrome-nickel plated. (Tr. Tran. Day 2 8-10.)

Regarding the DEA task-force agent, Welch filed and renewed a pre-trial motion to quash the indictment based on the agent's conflicting testimony before the grand jury, but the court found that the officer did not attempt to mislead the grand jury and denied this motion twice. Welch also raised the issue during the agent's direct examination to impeach the agent's credibility, and the agent acknowledged at trial that he did not see Moran coming up the basement steps. (Tr. Tran. Day 1 148-50.) Welch reiterated the agent's conflicting testimonies during his closing argument. (Tr. Tran. Day 2 110-11.)

Moran also argues that Welch was ineffective because he did not call several witnesses to testify despite them allegedly being available.[8] In support of this argument, petitioner filed

---

[8] Counsel also raises for the first time the issue that Agent Daniel was not sequestered during the trial and heard all the other witnesses' testimony, permitting him to tailor his testimony. However, it is well settled that the government's chief investigating agent may remain in the courtroom during the proceedings. United States v. Parodi, 703 F.2d 768, 773 (4th Cir. 1983). Moreover, petitioner procedurally defaulted this claim when he declined to pursue a direct appeal. See Bousley, 523 U.S. at 622.

several documents to support his claims of what some witnesses would have testified. Petitioner's sister would testify that the car containing the firearm was hers, but this statement does not overcome evidence adduced at trial that Moran also possessed several other firearms in furtherance of his drug trade unrelated to the firearm found in the car. The sister's statement that she lent Moran money was not contradicted during the case; Moran and the government's main witness stated the same. The sister does not claim ownership of the gun; instead, she says she loaned the car to Mike Irrizary the day before, and Mike told her that another person named Sefs told Mike that the gun was Sefs. The sister avers that she would have testified to these statements. However, the inadmissibility of this hearsay is apparent, and other evidence beyond the firearm found in the car supports petitioner's convictions.

A person named Robert Stevenson submitted an unverified statement that "Puller was working on the basement and [Moran's fiancé] gave [Puller] a key . . . so he could work on the room as he could." (Pet'r. Resp. (no. 220) 16.) However, this statement is not an affidavit and does not establish Stevenson's personal knowledge of these alleged facts. Therefore, the court does not consider it.[9]

Petitioner's fiancé avers that she would testify to the same information that petitioner already stated in court. The fiancé would say that she asked petitioner to go to her apartment because she believed someone else was inside of it; petitioner went to the house and told the fiancé that Puller was there to work on the basement; and she told petitioner to stay at the apartment until Puller finished working there. She further states that petitioner stayed there sometimes, helped pay her bills, and washed clothes in the basement. To the extent this

---

[9]Even if it did, this information is simply a recitation of petitioner's testimony that the jury considered.

16

information duplicates petitioner's testimony, it does not tend to establish petitioner's innocence. Instead, the fiancé's testimony that petitioner washed clothes in the basement where officers found the bag containing hundreds of small packets of heroin and a large bag of heroin in plain view would be more damaging to petitioner's case. Furthermore, the fiancé's proposed testimony about petitioner's close ties to the apartment would frustrate Welch's strategy to distance petitioner's nexus to the apartment, the basement, and the drugs.

Petitioner also alleges that Welch was ineffective for not knowing that a gun's proximity to drugs was insufficient to prosecute him and Count Three should not have been tried before a jury. However, the evidence presented by the United States established that petitioner kept a firearm to protect himself, his drugs, and the proceeds from his drug sales. Petitioner relied on the firearm during narcotic-related trips to New York. Petitioner's co-defendant testified that petitioner would carry guns with him, as would other various drug players. (Tr. Tran. Day 1 211.) Petitioner sold drugs to receive a firearm, which turned out to be the same firearm later seized from the vehicle during the traffic stop. (Id. 213, 217.) Petitioner also possessed a gun on his person during drug-purchasing trips to New York. (Id. 215.) The jury accepted a co-defendant's and narcotic purchaser's sworn statements that petitioner possessed various firearms in furtherance of petitioner's heroin distribution conspiracy. Therefore, Welch was not deficient for not arguing that a gun was not near the narcotics because the facts of the case provided sufficient alternative bases to tie petitioner to a firearm while conducting in his drug trade.

Petitioner alleges that Welch was ineffective for not severing Count Four from the other counts before trial. Petitioner argues that the admitted evidence of petitioner's prior convictions unfairly prejudiced him. Severance of a § 922(g) charge from other charges in the same

17

indictment is not required simply because the charges relate to each other. See United States v. Silva, 745 F.2d 840, 844 (4th Cir. 1984) (rejecting imposition of per se rule that a charge under the firearms statute always be severed from any other criminal charge). See also United States v. Rhodes, 32 F.3d 867, 871-72 (4th Cir. 1994) (stating a limiting jury instruction is not always required when trial court denies motion to sever). Absent any other evidence, Welch was not deficient simply because he did not move to sever Count Four. See Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977) (counsel's trial strategy decisions deserve a high degree of deference in habeas review); Horn Aff. 2 (stating petitioner wanted to testify in his own defense and only several days were left before trial to complete preparations when Horn discussed the matter with Welch).

Furthermore, petitioner himself told the jury that he was twice convicted as a felon, both as an adult and a juvenile. Thus, any prejudice that may have resulted was a product of plaintiff's own statement, not Welch's performance. Moreover, appropriate trial strategy would include discussing damaging information during direct examination to provide the witness the opportunity to explain the circumstances. Prompted by Welch's questions, petitioner explained to the jury that his prior incarceration taught him "not to deal with drugs or anything" because he did not "want to go back to the penitentiary" and wanted "to take care of [his] children." (Tr. Tran. Day 2 63:7-18)

After reviewing the record and recalling the events at issue, the court finds that petitioner fails to establish either Strickland prong as to each of his ineffective assistance claims against Welch. Accordingly, petitioner is not entitled to relief, and the court grants the United States' supplemental motion for summary judgment.

III.

For the foregoing reasons, the court grants petitioner's motions to file a response out of time, denies petitioner's motion for default judgment, grants the United States' supplemental motion for summary judgment, denies petitioner's motion to vacate, set aside, or correct sentence, and denies as moot petitioner's request for a hearing. Based upon the court's finding that the petitioner has not made the requisite substantial showing of denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is denied.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to counsel of record for the petitioner and for the United States.

**ENTER**: This 2nd day of November, 2010.

/s/ James C. Turk
Senior United States District Judge